FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KAVA HOLDINGS, LLC, DBA
Hotel Bel-Air,

          *Petitioner*,

  v.

NATIONAL LABOR RELATIONS
BOARD,

          *Respondent*,

UNITE HERE LOCAL 11,

          *Respondent-Intervenor*.

No. 21-70225

NLRB No. 31-
CA-074675

OPINION

---

NATIONAL LABOR RELATIONS
BOARD,

          *Petitioner*,

  v.

KAVA HOLDINGS, LLC, DBA
Hotel Bel-Air,

          *Respondent*.

No.    21-70638
        21-71334

NLRB No. 31-
CA-074675

On Petition for Review of an Order of the
National Labor Relations Board

Argued and Submitted October 20, 2022
Seattle, Washington

October 18, 2023

Before:  Ryan D. Nelson, Danielle J. Forrest, and Jennifer
Sung, Circuit Judges.

Opinion by Judge Sung

---

## SUMMARY[*]

---

### Labor Law

The panel denied in part and dismissed in part Kava
Holdings, LLC's petition for review and granted the
National Labor Relations Board's cross-petition for
enforcement of its order, which found that Kava committed
unfair labor practices in violation of Sections 8(a)(1),
8(a)(3), and 8(a)(5) of the National Labor Relations Act.

Intervenor UNITE HERE Local (the Union) was the
exclusive collective bargaining representative for a unit of
employees whom Kava employed at the Hotel Bel-
Air.  When the Hotel reopened after extensive renovations,
Kava refused to rehire 152 employees even though they were

---

[*] This summary constitutes no part of the opinion of the court.  It has
been prepared by court staff for the convenience of the reader.

qualified for the open positions and refused to recognize the Union as the unit employees' bargaining representative.

The panel held that substantial evidence supported the Board's finding that Kava committed an unfair labor practice by refusing to rehire union-affiliated former employees so that Kava could avoid its statutory duty to bargain with the Union. Substantial evidence supported the Board's finding of anti-union animus where the Board properly drew an inference of animus from Kava's prior unlawful conduct, the Board reasonably inferred animus from the testimony of a Kava human resources manager, and there was more than substantial evidence of Kava's generalized animus against former employees based on their union affiliation. The panel rejected Kava's argument that it affirmatively proved that it refused to rehire the former employees for legitimate business reasons.

The panel held that substantial evidence supported the Board's finding that Kava committed an unfair labor practice by refusing to recognize and bargain with the Union as it reopened the Hotel, and by unilaterally changing the bargaining unit's established, pre-closure terms and conditions of employment.

## COUNSEL

Karl M. Terrell (argued) and Arch Y. Stokes, Stokes Wagner ALC, Atlanta, Georgia; Diana Lerma, Stokes Wagner LLC, Sherman Oaks, California; for Petitioner.

Michael R. Hickson (argued), Senior Attorney; Usha Dheenan, Supervisory Attorney; Ruth E. Burdick, Deputy Associate General Counsel; Peter S. Ohr, Deputy General Counsel; Jennifer A. Abruzzo, General Counsel; David Habenstreit, Assistant General Counsel; National Labor Relations Board, Washington, D.C.; for Respondent.

Kirill Penteshin (argued) and Henry M. Willis, Schwartz Steinsapir Dohrmann & Sommers LLP, Los Angeles, California; Jeremy Blasi and Alyssa Peterson, Unite Here Local 11, Los Angeles, California; for Respondent-Intervenor.

# OPINION

SUNG, Circuit Judge:

For some years, intervenor UNITE HERE Local 11 (Union) was the exclusive collective bargaining representative for a unit of employees whom Kava Holdings LLC employed at the Hotel Bel-Air. The bargaining unit included kitchen workers, dining and room service employees, housekeepers, garage and front desk employees, gardeners, maintenance employees, and more. In September 2009, Kava temporarily closed the Hotel for extensive renovations and laid off all the unit employees. In July 2011, as Kava prepared to reopen the Hotel, Kava conducted a job fair to fill about 306 unit positions. Approximately 176 union-affiliated former employees applied for those positions. Kava refused to rehire 152 of them.

The National Labor Relations Board found that Kava committed unfair labor practices by refusing to rehire former employees because of their union affiliation, refusing to recognize and bargain with the Union, and unilaterally changing unit employees' terms and conditions of employment, in violation of Sections 8(a)(1), 8(a)(3), and 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (3), (5). The Board ordered various remedies, including reinstatement of the former employee applicants who were affected by Kava's discriminatory conduct. Kava petitions for review of the Board's order and a supplemental remedial order, and the Board cross-applies for enforcement. Because the Board's findings are supported by substantial evidence, we deny Kava's petition for review and grant the Board's application for enforcement.

## BACKGROUND

Kava's conduct surrounding the temporary closure of the Hotel Bel-Air gave rise to two separate but related Board orders finding that Kava committed multiple unfair labor practices. The first order, *Hotel Bel-Air I*, addressed Kava's conduct at the start of the temporary closure. *See Hotel Bel-Air*, 358 NLRB 1527 (2012), *adopted by* 361 NLRB 898 (2014), *enforced*, 637 F. App'x 4 (D.C. Cir. 2016). The second order, *Hotel Bel-Air II*, addressed Kava's conduct upon reopening and is the subject of this appeal. *See Hotel Bel-Air*, 370 NLRB No. 73 (2021).[1]

When Kava temporarily closed the Hotel in September 2009, Kava and the Union initially bargained over the closure's effects on the laid-off employees. But after some months, Kava ended those negotiations. In *Hotel Bel-Air I*, the Board found that Kava violated its duty to bargain in good faith in two ways: by unilaterally implementing its "last, best, and final offer" on severance, waiver, and release terms without having first reached a valid impasse in negotiations with the Union, and by bypassing the Union and dealing directly with the laid-off employees. 358 NLRB at 1527–28. As to the second violation—unlawful engagement in direct dealing—Kava asked the laid-off employees to sign waivers of their recall rights in exchange for severance payments. *Id.* The Board ordered Kava to rescind the waivers and bargain in good faith with the Union. *Id.* at 1528–29.

While the unfair labor practice charges underlying *Hotel Bel-Air I* were pending, Kava prepared to reopen the Hotel.

---

[1] The Board also issued a third, supplemental order, *Hotel Bel-Air III*, regarding a remedial issue. *See Hotel Bel-Air*, 371 NLRB No. 27 (2021).

Both before and after the renovation, the Hotel Bel-Air was a five-star luxury hotel. Although Kava planned significant updates to the Hotel's service model upon reopening, the job descriptions and duties for most unit positions remained essentially the same.

In July 2011, a few months before the Hotel's reopening, Kava conducted a three-day job fair. The job fair advertisements stated that Kava sought candidates with "exceptional talent," "a passion for excellence, a warm friendly, and positive attitude, and strong verbal communication skills." Kava also noted that "[p]revious luxury hospitality experience" was "desirable."

Kava invited its union-affiliated former employees to apply during the first morning of the job fair and reserved the remaining two-and-a-half days for members of the public. This schedule allowed Kava to easily "distinguish [union-affiliated former employees] from other applicants." *Hotel Bel-Air II*, 370 NLRB No. 73, slip op. at 12.

At the job fair, applicants completed an initial written application that included an employment history section.[2] Then, they proceeded through a three-step interview process. First, all applicants lined up for an initial interview, during which they stated the position they were applying for, their evening and weekend availability, and their reasons for wanting to work at the Hotel. Second, some applicants advanced to a same-day departmental interview, during which they were asked specified questions about their work experience. Third, applicants who passed the departmental interview were scheduled for final interviews after the job

---

[2] As discussed further below, Kava deviated from this approach with respect to some of the former employees.

fair. After the three interviews, management made hiring decisions.

At the time of the job fair, Kava was hiring for about 306 unit positions. Approximately 176 union-affiliated former employees applied for those positions at the job fair. Kava did not hire 152 of them. The Board found, and Kava does not dispute, that the former-employee applicants "were qualified for the open positions, and many had several prior years of positive evaluations while they worked for [the Hotel Bel-Air]."

When Kava reopened the Hotel in October 2011, Kava refused to recognize the Union as the unit employees' collective bargaining representative. Kava also made various unilateral changes to the bargaining unit's terms and conditions of employment, including wages, benefits, breaks, and paid time off.

The Union filed an unfair labor practice charge regarding Kava's reopening conduct, which NLRB Region 31 placed in abeyance pending the outcome of *Bel-Air I.* Eventually, the D.C. Circuit enforced *Hotel Bel-Air I.* 637 F. App'x at 5. Then, NLRB Region 31 took the present case out of abeyance and issued a complaint, which was heard by an administrative law judge (ALJ). After a 21-day trial, the ALJ issued a thorough decision with extensive findings of fact.

At trial, Kava contended that it did not hire the union-affiliated former employees because they lacked the demeanor or skills needed for the type of luxury hotel service that Kava intended to provide upon reopening. After a detailed analysis of Kava's job fair records, however, the ALJ found that Kava's proffered reasons for not rehiring the employees were pretextual. The ALJ found that the union-affiliated former employees who participated in the July

2011 job fair had the requisite experience and training for the positions they had applied for, and that many of them had received positive work evaluations while working for the Hotel. Yet, at the job fair, Kava excluded most of the former employees at the initial interview stage for "unexplained" or "obviously insufficiently explained reasons" or because of a "bogus explanation." *Id*. Additionally, for many of the former employees, Kava did not follow its established three-step hiring process and gave no explanation for treating those former employees differently.

Based on Kava's job fair records, the testimony of a Human Resources manager, and Kava's prior unlawful conduct, the ALJ found that Kava's anti-union animus—that is, Kava's desire to reopen the Hotel Bel-Air as a non-union hotel—contributed to Kava's decision not to rehire the former employees. Specifically, the ALJ found that Kava intended "to prevent a majority of former employees from being rehired when the Hotel reopened" so that Kava could avoid its statutory duty to recognize and bargain with the Union. *Hotel Bel-Air II*, 370 NLRB No. 73, slip op.at 12.

Ultimately, the ALJ found that Kava discriminatorily refused to rehire its union-affiliated former employees, in violation of Sections 8(a)(3) and (1) of the NLRA. *Hotel Bel-Air II*, 370 NLRB No. 73, slip op. at 11. The ALJ also found that Kava refused to recognize and bargain with the Union upon reopening, and that Kava unilaterally changed unit employees' terms and conditions of employment, in violation of Sections 8(a)(5) and (1) of the NLRA. *Id.* at 13.[3] The ALJ ordered Kava to reinstate its union-affiliated former

---

[3] Violations of Sections 8(a)(3) and (5) produce derivative violations of Section 8(a)(1). *Metro. Edison Co. v. NLRB*, 460 U.S. 693, 698 n.4 (1983); *see also* 29 U.S.C. § 158(a)(1).

employees and to make them whole for any lost earnings or benefits, and interim search-for-work and employment expenses. The ALJ also ordered Kava to bargain with the Union and cease and desist from unilaterally changing the terms and conditions of employment. *Id.* at 14.

Kava filed exceptions to the ALJ's decision with the Board. The Board affirmed the ALJ's rulings, findings, and conclusions, and adopted the ALJ's recommended order.[4] *Id.* at 1.

## STANDARD OF REVIEW

"A court must uphold a Board decision when substantial evidence supports its findings of fact and when the agency applies the law correctly." *United Nurses Ass'ns of Cal. v. NLRB*, 871 F.3d 767, 777 (9th Cir. 2017) (citation and quotation marks omitted).

The Board's factual findings are "conclusive" "if supported by substantial evidence on the record considered as a whole." 29 U.S.C. § 160(e). When reviewing factual findings, "a court may not 'displace the Board's choice between two fairly conflicting views, even though the court

---

[4] The Board adopted the ALJ's recommended order with a few modifications. In relevant part, when affirming the ALJ's finding that anti-union animus contributed to Kava's decision not to rehire the former employees, the Board did not rely on the disparity between the number who applied and the number who were hired, nor did it rely on *Glenn's Trucking Co.*, 332 NLRB 880 (2000), *enforced*, 298 F.3d 502 (6th Cir. 2002). *Hotel Bel-Air II*, 370 NLRB No. 73, slip op. at 1 n.4. The Board also severed and remanded a remedial issue regarding 13 unit employees who were left out of the ALJ's reinstatement order. Later, the Board issued a supplemental order that required Kava to offer reinstatement to those 13 employees, provided that the General Counsel identified them during subsequent compliance proceedings. *Hotel Bel-Air III*, 371 NLRB No. 27, slip op. at 2.

would justifiably have made a different choice had the matter been before it de novo.'" *United Nurses*, 871 F.3d at 777 (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

The Board has "special expertise in drawing" inferences of credibility and unlawful motive, and "its determinations are entitled to judicial deference." *Kallmann v. NLRB*, 640 F.2d 1094, 1099 (9th Cir. 1981); *see also Pay'n Save Corp. v. NLRB*, 641 F.2d 697, 702 (9th Cir. 1981) ("The determination of motive . . . is particularly within the purview of the NLRB."). "We defer to any 'reasonably defensible' interpretation of the NLRA by the Board." *United Nurses*, 871 F.3d at 777 (quoting *Retlaw Broad. Co. v. NLRB*, 53 F.3d 1002, 1005 (9th Cir. 1995)).

## DISCUSSION

## I. Discriminatory Refusal to Rehire

Substantial evidence supports the finding that Kava committed an unfair labor practice in violation of Sections 8(a)(1) and (3) of the NLRA, 29 U.S.C. § 158(a)(1) and (3), by refusing to rehire union-affiliated former employees so that Kava could avoid its statutory duty to bargain with the Union.

Section 8(a)(3) of the Act prohibits an employer from "discriminating in regard to hire . . . [in order to] discourage membership in any labor organization." 29 U.S.C. § 158(a)(3). An employer violates Section 8(a)(3) by refusing to hire job applicants because of their union affiliation. *Phelps Dodge Corp. v. NLRB,* 313 U.S. 177, 181–89 (1941).

In cases alleging a discriminatory refusal to hire, the General Counsel typically must show "(1) that the

respondent was hiring, or had concrete plans to hire, at the time of the alleged unlawful conduct; (2) that the applicants had experience or training relevant to the announced or generally known requirements of the positions for hire, or in the alternative, that the employer has not adhered uniformly to such requirements, or that the requirements were themselves pretextual or were applied as a pretext for discrimination; and (3) that antiunion animus contributed to the decision not to hire the applicants." *FES, A Div. of Thermo Power*, 331 NLRB 9, 12 (2000), *aff'd*, 301 F.3d 83 (3d Cir. 2002). Here, it is undisputed that Kava was hiring for over 300 positions at the time of the alleged discrimination and that the union-affiliated former-employee applicants had relevant training and experience for the open positions. Kava disputes only the Board's finding that anti-union animus was a motivating factor in Kava's decision not to hire the union-affiliated former employees.

To determine whether anti-union animus was a motivating factor in Kava's hiring decisions, the Board applied the causation test established in *Wright Line*, 251 NLRB 1083 (1980). "Under *Wright Line*, the General Counsel must make a showing sufficient to support the inference that protected conduct was a motivating factor in the employer's decision." *United Nurses*, 871 F.3d at 778 (citations and quotation marks omitted). An employer's unlawful motivation can be inferred from direct or circumstantial evidence. *New Breed Leasing Corp. v. NLRB*, 111 F.3d 1460, 1464–66 (9th Cir. 1997). Direct evidence of actual motive "that is not also self-serving" rarely exists. *Shattuck Denn Mining Corp. v. NLRB*, 362 F.2d 466, 470 (9th Cir. 1966). Further, we give "special deference" to the Board where, as here, it draws derivative inferences from the

evidence. *NLRB v. Tischler*, 615 F.2d 509, 511 (9th Cir. 1980).

Once the General Counsel has made this initial showing, the burden of persuasion shifts "to the employer to demonstrate that the same action would have taken place even in the absence of protected conduct." *Healthcare Emps. Union, Loc. 399 v. NLRB*, 463 F.3d 909, 919 (9th Cir. 2006) (quoting *Wright Line*, 251 NLRB at 1089). "An employer cannot prove this affirmative defense where its asserted reasons for [its action] are found to be pretextual." *United Nurses*, 871 F.3d at 779 (citations and quotation marks omitted).

Here, Kava contends that the Board erred by finding that the General Counsel made a sufficient showing under *Wright Line*. For the General Counsel's initial burden under *Wright Line*, a sufficient showing generally consists of three elements: "(1) union or other protected activity by the employee, (2) employer knowledge of that activity, and (3) animus against union or other protected activity on the part of the employer." *Intertape Polymer Corp.*, 372 NLRB No. 133, slip op. at 7 (2023). Kava does not dispute (1) that the former employees' Union affiliation is protected activity, or (2) that Kava had knowledge of that activity. Kava disputes only the third element, contending that there is insufficient evidence of animus. Kava also contends that it affirmatively proved that it had legitimate business reasons for refusing to rehire the former employees.

### A. Anti-union Animus

Here, substantial evidence supports the Board's finding of anti-union animus. That evidence includes: (1) Kava's prior unlawful conduct; (2) the testimony of Kava Human Resources Manager Sandra Abrizu; and (3) Kava's hiring

conduct, including job fair records revealing that Kava disfavored former-employee applicants and that Kava's proffered reasons for rejecting them were pretextual. *Hotel Bel-Air II*, 370 NLRB No. 73, slip op. at 7–10. We address Kava's arguments about each category of evidence, and the evidence as a whole, in turn.

1.

Kava argues that the Board erred by drawing an inference of animus in this case from Kava's prior unfair labor practice conduct in *Bel-Air I*. We disagree. An employer's prior unfair labor practices may support a finding of unlawful motive. *See, e.g.*, *Kallmann*, 640 F.2d at 1097–1100.

Kava's argument hinges on its misreading of *Mt. Clemens General Hospital*, 344 NLRB 450 (2005), which Kava asserts broadly prohibits inferring animus from an employer's prior unlawful conduct. But *Mt. Clemens* recognizes that prior unfair labor practice violations are relevant in determining whether animus exists in a subsequent case. *Id.* at 455-56 (collecting examples). *Mt. Clemens* did not overrule that longstanding precedent. Rather, *Mt. Clemens* found that the circumstances presented there were materially different from the prior cases it discussed. As the Board explained in *Mt Clemens*, animus could not be inferred from Mt. Clemens's prior unfair labor practice case because the events underlying the prior case had occurred four years earlier and had no factual connection to the events at issue in the present case. *Id.* at 456.

Unlike in *Mt. Clemens*, the events at issue in *Hotel Bel-Air I* are connected and close in time to the events at issue here. The unfair labor practice charges in *Hotel Bel-Air I* concern Kava's conduct towards the same union-affiliated

employees during the same renovation closure. *Hotel Bel-Air I*, 358 NLRB at 1527. In *Hotel Bel-Air I*, the Board found that Kava violated its duty to bargain during the renovation closure by unilaterally implementing its "last, best, and final offer" on severance, waiver, and release terms without first reaching a valid impasse with the Union, and by bypassing the Union and dealing directly with laid-off employees. *Id.* Kava engaged in unlawful direct dealing by asking the laid-off employees to sign waivers of their recall rights in exchange for severance payments. *Id.* at 1527–28. Kava engaged in this unlawful conduct during the initial eight months of Kava's closure of the Hotel Bel-Air for renovation, and Kava conducted the job fair and hiring process at issue in the present case only a year later. The Board could reasonably infer from Kava's conduct in both cases—asking union-affiliated employees to waive their recall rights in exchange for severance pay and refusing to rehire union-affiliated employees upon reopening the Hotel—that Kava intended to prevent union-affiliated employees from comprising a majority of the Hotel Bel-Air workforce upon reopening. Thus, Kava's unlawful conduct in *Bel-Air I* is substantial evidence supporting the finding of animus in the present case.

2.

Kava argues that the Board erred by inferring animus from the testimony of a Kava human resources manager, Sandra Arbizu. The Board drew an inference of animus from the following exchange: Counsel asked Arbizu whether Kava had made "any preparations" to "deal with the Union" upon reopening. Arbizu answered "yes," and then explained that Kava was conducting training on "being good managers," which "is preventative kind of work that we do to educate our managers so that your employees do not need

a third party to speak for them." Counsel then asked Arbizu if she meant that Kava was taking "preventative measures to make sure that a union doesn't need to come, or [the employees] don't need to be represented by a union, because those things are being taken care of," and Arbizu answered affirmatively. Because Arbizu testified that Kava was taking "preventative" measures aimed at persuading employees that they would not need a union to come and represent them, the Board inferred that Kava was intending to reopen as a non-union hotel.

Kava argues that we should interpret Arbizu's testimony differently from the Board because when counsel asked Arbizu point blank whether Kava was "preparing to open as a non-union hotel without the prior union," she responded, "No. . . it's not about a union or non-union. It's part of preparing your staff so that they're ready to deal with things that are going to come along." Although Arbizu's statements are "capable of noncoercive interpretation," "[i]t is not for us . . . to weigh differing interpretations." *NLRB v. Fort Vancouver Plywood*, 604 F.2d 596, 599 n.1 (9th Cir. 1979). We ask only whether the factfinder's interpretation was "reasonable." *Id.* (citing *Penasquitos Village, Inc. v. NLRB*, 565 F.2d 1074, 1080–82 (9th Cir. 1977)). Here, the inference drawn by the ALJ and sustained by the Board was reasonable.

3.

Kava takes issue with the Board's findings, based on Kava's job fair records, that Kava treated its union-affiliated former employees differently than other applicants and that its proffered reasons for not rehiring those employees were pretextual. Kava does not meaningfully dispute the Board's analysis of Kava's job fair records. Instead, Kava argues for

the first time on appeal that the Board could not consider the job fair records because they are "hearsay" and "inherently unreliable." Because Kava did not urge this evidentiary objection before the Board, Kava waived it, and we are jurisdictionally barred from considering it. *See* 29 U.S.C. § 160(e) ("[N]o objection that has not been urged before the Board . . . shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."); *NLRB v. Friendly Cab Co.*, 512 F.3d 1090, 1103 n.10 (9th Cir. 2008) ("Section 10(e) of the Act constitutes a jurisdictional bar to this court considering claims not raised before the NLRB.").

We conclude that the Board reasonably inferred animus from this evidence. *Intertape*, 372 NLRB No. 133, slip op. at 13 ("[T]he Board "has routinely inferred animus and a causal connection from, among other factors, . . . disparate treatment of the employee; and reliance on pretextual reasons for the action.").

4.

Kava also contends that holistically there is insufficient evidence to demonstrate a causal connection between any animus and Kava's decision not to rehire its union-affiliated former employees. We disagree. As noted above, we review for substantial evidence the Board's factual finding that the record supports an inference of causation, and we defer to the Board's "special expertise" in making such inferences. *Kallmann*, 640 F.2d at 1099; *Pay'n Save Corp.*, 641 F.2d at 702; *Universal Camera Corp.*, 340 U.S. at 488. Kava's prior unlawful conduct in *Hotel Bel-Air I*, Arbizu's testimony, and the job fair records that show disparate treatment of former employees and pretext are more than enough to support an inference that anti-union animus was a motivating factor in

Kava's refusal to rehire its union-affiliated former employees. *See New Breed*, 111 F.3d at 1465 (finding that employer's "clandestine hiring practices" and false promises to retain union-affiliated employees were substantial evidence to support inference that employer's hiring practices were motivated by anti-union animus).

Kava asserts that *Tschiggfrie Properties, Ltd.*, 368 NLRB No. 120, slip op. at 1 (2019), heightened the General Counsel's evidentiary burden under *Wright Line*, and that the Board failed to apply that heightened standard in this case. Kava's reading of *Tschiggfrie* is incorrect. Indeed, the Board recently confirmed that *Tschiggfrie* did *not* heighten or otherwise modify the General Counsel's burden. *See Intertape*, 372 NLRB No. 133, slip op. at 7–11 (acknowledging that "the Board's decision in *Tschiggfrie* . . . was susceptible to misinterpretation" and "mak[ing] clear that *Tschiggfrie* did not alter the General Counsel's burden under the longstanding *Wright Line* framework").

In support of the argument that stronger or more direct evidence of animus is required, Kava argues that, under *Tschiggfrie*, "more than 'circumstantial evidence of *any* animus or hostility' is needed" and "a clear causal nexus must be proven at the *prima facie* stage." The Board in that case, however, merely clarified that the General Counsel does not "*necessarily*" satisfy their burden to show that protected conduct was a motivating factor in the employer's decision "through evidence of general animus or hostility toward union or other protected activity alone." *Tschiggfrie*, 368 NLRB No. 120, slip op. at 7–8 n.25 (emphasis added). The Board then took pains to explain that it was *not* requiring the General Counsel to present direct evidence of motive, and that it was *not* adding an undefined "nexus" element to the *Wright Line* test. *Id.* at 8. Further, the Board emphasized

that it was adhering to its "longstanding principle that '[p]roof of discriminatory motivation can be based on direct evidence or can be inferred from circumstantial evidence based on the record as a whole.'" *Id.* at 11 (quoting *Embassy Vacation Resorts*, 340 NLRB 846, 848 (2003)).

5.

Finally, Kava argues that the Board erred in finding that Kava was motivated by "generalized" animus against its former employees as a group, because of their union affiliation. Relying again on *Tschiggfrie*, Kava asserts that the Board has held that the General Counsel cannot rely on evidence of generalized animus to prove a violation of Section 8(a)(5), and must instead introduce evidence of individualized animus, that is, animus towards certain employees because of their particular union activities or sentiments. Again, Kava misreads *Tschiggfrie*.

In *Tschiggfrie*, the Board clarified that the General Counsel's animus evidence "must be sufficient to establish that a causal relationship exists between the employee's protected activity and the employer's adverse action against the employee." 368 NLRB No. 120, slip op. at 8. The Board further explained that "evidence of animus that is 'general' in that it is not tied to any particular employee, may nevertheless be sufficient, under the circumstances of a particular case, to give rise to a reasonable inference that a causal relationship exists between the employee's protected activity and the employer's adverse action." *Id.*; *see also Great Lakes Chem. Corp. v. NLRB*, 967 F.2d 624, 628 (D.C. Cir. 1992) ("[W]holesale rejection of former [] employees because they were Union members is, by its nature, equally applicable to each employee. Retail proof regarding each individual would be surplusage."). The Board recently re-

emphasized "that the Board in *Tschiggfrie* did not revise the *Wright Line* framework by adding a requirement that the General Counsel must show particularized motivating animus towards an employee's own protected activity." *Intertape*, 372 NLRB No. 133, slip op. at 13.

Kava also contends that there is not enough evidence to establish it harbored any generalized animus against its former employees because of their union affiliation. We reject this contention. The showing here (e.g., Kava's prior unfair labor practices, HR manager Arbizu's testimony, job fair records showing disparate treatment, and the Board's finding of pretext) is more than substantial evidence of Kava's generalized animus against former employees based on their union affiliation.

## B. Affirmative Defense

In addition to challenging whether sufficient evidence establishes that Kava engaged in discriminatory hiring, Kava argues that it affirmatively proved that it refused to rehire the former employees for legitimate business reasons. Kava does not offer employee-specific explanations for its decisions. Rather, Kava broadly asserts that it refused to rehire its former employees because it intended to adopt a new luxury service model upon reopening and it wanted employees who were well-suited to that model.

The Board found that Kava's proffered reasons for refusing to hire former employees were pretextual, based on the ALJ's detailed analysis of Kava's own records, which the Board fully adopted. *Hotel Bel-Air II*, 370 NLRB No. 73,

slip op. at 1, 11–13.[5] Kava does not meaningfully challenge that analysis. Nor does Kava argue that the Board's descriptions of the record or examples given are inaccurate. Although Kava asserts that the Board "cherry-picked" examples, Kava does not point to any evidence that the examples the Board provided are not representative of the former employees as a whole. Because the Board found that Kava's asserted reasons for not hiring the former employees were pretextual, Kava cannot prove this affirmative defense. *See United Nurses*, 871 F.3d at 779 (citing *In re Stevens Creek Chrysler Jeep Dodge, Inc.*, 357 NLRB 633, 637 (2011)).

To the extent Kava is asking this Court to "reweigh the evidence, try the case de novo, or substitute [its] judgment for that of the Board," *El Paso Elec. Co. v. NLRB,* 681 F.3d 651, 656 (5th Cir. 2012), we may not do so, *United Nurses*, 871 F.3d at 777.

## II. Unlawful Refusal to Bargain

Under Section 8(a)(5) of the NLRA, it is an unfair labor practice for an employer to "refuse to bargain collectively with the representatives of [its] employees." 29 U.S.C. § 158(a)(5). An employer has a duty to negotiate with its represented employees' union over potential changes in their terms and conditions of employment. 29 U.S.C. § 158(d); *see also NLRB v. Wilder Const. Co.*, 804 F.2d 1122, 1124–25 (9th Cir. 1986) (discussing an employer's "continuing duty . . . to recognize and to bargain with the union").

---

[5] Because the Board adopted the ALJ's analysis, we treat the Board's order and the adopted ALJ analysis as one order. *See Hotel Bel-Air II*, 370 NLRB No. 73, slip op. at 1.

Substantial evidence supports the Board's finding that Kava committed an unfair labor practice in violation of Sections 8(a)(1) and (5) of the NLRA, 29 U.S.C. § 158(a)(1) and (5), by refusing to recognize and bargain with the Union as it reopened the Hotel, and by unilaterally changing the bargaining unit's established, pre-closure terms and conditions of employment.

The Board found that the "evidence clearly supports the fact that the shutdown of the Hotel was planned as a temporary renovation" and that Kava's bargaining relationship with the Union "survived the hiatus" in Hotel operations, even after the collective bargaining agreement expired on September 30, 2009. *Hotel Bel-Air II*, 370 NLRB No. 73, slip op. at 13. Accordingly, the Board held that Kava was obligated to recognize and bargain with the Union over the effects of the temporary shutdown and rehiring, and that Kava was prohibited from unilaterally changing the terms and conditions of unit members' employment. *Id.* at 13–14. Kava does not dispute that it failed to recognize or bargain with the Union, nor that it unilaterally changed the terms and conditions of unit employees' employment. Kava properly raises only one issue: Whether Kava's duty to bargain survived the temporary shutdown of the Hotel.[6]

To determine whether a collective bargaining relationship and the parties' related duties survive a shutdown in employer operations, the Board primarily considers the "critical distinction between a temporary shutdown and an indefinite, apparently permanent, shutdown." *Golden State Warriors*, 334 NLRB 651, 654 n.8

---

[6] Kava's remaining arguments are jurisdictionally barred because Kava failed to raise them before the Board. *See* 29 U.S.C. § 160(e); *Friendly Cab Co.*, 512 F.3d at 1103 n.10.

(2001) (collecting cases), *enforced*, 50 F. App'x 3 (D.C. Cir. 2002). The Board also considers whether the employees who were laid off or discharged because of the shutdown had a "reasonable expectation of reemployment." *El Torito-La Fiesta Rests., Inc. v. NLRB*, 929 F.2d 490, 495–96 (9th Cir. 1991).[7]

Importantly, Kava does not dispute that the Hotel closure was temporary and that it "planned from the outset" to reopen the Hotel after renovations were complete. Kava challenges only the Board's finding that the bargaining unit employees had a reasonable expectation of rehire.

In *Hotel Bel-Air I*, 358 NLRB at 1528, the Board determined that the bargaining unit employees "retained a reasonable expectation of recall from layoff" when Kava closed the Hotel for renovations. The Board further concluded that the employees' reasonable expectation of recall continued after the collective bargaining agreement expired on September 30, 2009, and beyond Kava's unlawful direct dealing with the bargaining unit employees on July 7, 2010. *Id.* In fact, the Board found that Kava's July 7, 2010, offer to provide severance payments to the bargaining unit employees in exchange for their waiver of their recall rights "took it for granted that unit employees had some expectation of recall." *Id.* The Board relied on that finding in this case. *Hotel Bel-Air II*, 370 NLRB No. 73, slip op. at 12–13.

Kava cannot collaterally attack the finding in *Bel-Air I* that the former employees enjoyed a reasonable expectation

---

[7] The Board considers "a reasonable expectation of recall to be synonymous with a reasonable expectation of reemployment" or rehire. *El Torito*, 929 F.2d at 495 n.4.

of rehire when the Hotel closed for renovations on September 30, 2009. Instead, Kava asserts that things changed after July 2010, so that the employees no longer enjoyed a reasonable expectation of rehire by July 2011, when Kava conducted the job fair, or by October 2011, when Kava reopened the Hotel.

Kava asserts that the employees could no longer have a reasonable expectation of rehire in July 2011 because their contractual right to recall had expired by then. That argument, however, fails for two reasons. First, as a factual matter, the expiration of the employees' contractual right to recall is not a change in circumstance that occurred between July 7, 2010, and July 2011, because the contractual right to recall expired *before* July 7, 2010 (when Kava made its unlawful direct offer of severance payments in exchange for employees' waiver of their recall rights).[8] Second, employees do not need a contractual or other legal right to reemployment to have a "reasonable" expectation of reemployment. *See, e.g.*, *El Torito*, 929 F.2d at 496 (finding that employees retained reasonable reemployment expectation after contractual right expired).

Kava argues that this case is comparable to two cases where the Board found that the employees did not have a reasonable expectation of rehire: *Sterling Processing Corp.*, 291 NLRB 208 (1988), and *Cen-Vi-Ro Pipe*, 180 NLRB 344 (1969), *enforced,* 457 F.2d 775 (9th Cir. 1972). Those cases, however, are materially distinguishable. In both, the employer closed its facility for economic reasons, the shutdown was "indefinite," and the possibility of reopening

---

[8] Under the parties' collective bargaining agreement, the employees' contractual right to recall expired after they had been in continual layoff status for 9 months, which was on June 30, 2010.

was contingent on business deals or changes that might not occur. *See Sterling*, 291 NLRB at 208–10; *Cen-Vi-Ro Pipe*, 180 NLRB at 345–47. But here, as Kava acknowledges, the Hotel's "re-opening was planned from the outset." As noted above, the distinction between a temporary shutdown and an indefinite one is "critical" to the Board's determination of whether a collective bargaining relationship survives the hiatus in operations. Therefore, Kava has not identified any change in circumstance that occurred after July 2010 that could negate the employees' reasonable expectation of rehire, and the Board's finding that the Kava employees retained a reasonable expectation of reemployment is consistent with precedent and supported by substantial evidence.

## CONCLUSION

We DENY Kava's petition for review, except for the arguments that we DISMISS for lack of jurisdiction because Kava failed to raise them below. We GRANT the Board's cross-petition, and we enforce the Board's order in full.

**PETITION DENIED IN PART, DISMISSED IN PART; CROSS-PETITION GRANTED.**